

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 17, 2020

**BY ECF**

The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> 4/24/2020
> Mr. Olivieri is directed to file his November 2019 and March 2020 letters on ECF. Sentencing is set for May 28, 2020, at 2:15 PM. SO ORDERED.
>
> *Paul A Crotty*

    Re:   *United States v. Joseph Olivieri*,
            S2 18 Cr. 316 (PAC)

Dear Judge Crotty:

    The Government respectfully writes in the above-captioned matter with two requests.

    First, the Government requests that the Court order the defendant to file both his November 25, 2019 letter, and his most recent letter, dated March 11, 2020, publicly by ECF, with redaction to the extent warranted, pursuant to this district's ECF Privacy Policy, this Court's individual rules, and the First Amendment and common law rights of access to judicial materials.

    Second, the Government requests that the Court deny the defendant's latest request, made in his March 11. 2020 letter, that his sentencing—following a guilty plea last May, nearly a year ago—remains adjourned *sine die* on the basis of the same medical conditions. Rather, the Court should set a sentencing date, and if necessary once that date approaches, the Court may consider permitting the defendant to participate by videoconference rather than in person. In light of COVID-19, the Government has no objection to that date being set on or after April 27, 2020 (which date may be moved as warranted in light of COVID-19), but submits a date should be set.

    There is a strong public interest in sentencing in this matter—which concerns a doctor contributing meaningfully to the country's ongoing opioid crisis—taking place, irrespective of what sentence the Court chooses to impose, both for finality, and because sentencing permits the Court to order financial penalties, including forfeiture, which the defendant agreed to in his plea agreement, but has declined without explanation since to facilitate.

Honorable Paul A. Crotty
United States District Judge
March 17, 2020
Page 2

I.    Background

The defendant, a doctor, pleaded guilty conspiring to distribute controlled substances on May 2, 2019.  (Dkt. 77.)  In his allocution, the defendant stated:

> Between 2013 and 2018, I agreed with others to help unlawfully distribute prescription drugs.  I prescribed for illegitimate purposes prescription drugs, including oxycodone and testosterone.  This conduct took place in Manhattan.  I knew what I was doing was wrong and against the law.

(*Id.* at 11.)

Although remand was otherwise mandatory, *see* 18 U.S.C. § 3143(a)(2), in light of his then-present medical conditions, the Government agreed, pursuant to 18 U.S.C. § 3145(c), not to seek remand at the time.  The Court ordered sentencing to take place on August 5, 2019, approximately three months after the plea.

Less than a month prior to his sentencing date, the defendant sought a 60-day adjournment, which the Government opposed.  (Dkt. Nos. 81, 83.)  The Court granted the defendant's request in part, adjourning sentencing for 45 days.  (Dkt. 92.)

On July 30, 2019, the Court sentenced co-defendant Matthew Brady, who was not a doctor, to 36 months' imprisonment.  (Dkt. 90.)

The defendant thereafter renewed his request for at least a 60-day adjournment.  (Dkt. 93.)  The Court granted that request, adjourning sentencing to October 17, 2019, while noting that it was the "final" such adjournment that it would grant.  (Dkt. 94.)

As the Court explained in a subsequent order, discussed further below:

> Defendant's counsel has made numerous requests to adjourn the sentencing for a variety of reasons; some were personal and/ or professional, while others dealt with the Defendant's medical condition.  The Defendant is said to be "quite infirm and, while at liberty, he is able to be treated by his excellent doctors with who he feels comfortable and who are familiar with his medical needs." (Dkt. 93, at 2).  The Court granted "one further, but final" adjournment to October 17.  (Dkt. 94).

(Dkt. 107.)

Honorable Paul A. Crotty
United States District Judge
March 17, 2020
Page 3

On October 4, 2019, just under two weeks from sentencing, the defendant filed his sentencing submission. (Dkt. 101.)  In his submission, which was publicly filed by ECF, the defendant asked for leniency on multiple grounds, including his medical condition, and specifically, "hypertension, pure hypercholesterolemia, dyspnea, cardiomyopathy, and heart failure." (*Id.* at 8.)  The defendant also described other medical ailments, including a recent fall, and potential mental impairments, including with respect to "cognitive functioning." (*Id.* at 10.)

On October 15, 2019, the Government filed its sentencing submission. (Dkt. 102.)  The Government explained that it "agrees with the Probation Office that, in light of all of the facts and circumstances of this case, a below-Guidelines sentence would be reasonable.  But a sentence without any incarceration component, as the defendant seeks, would be unreasonable." (*Id.* at 5.).  In support of its position, the Government enclosed a letter from the Federal Bureau of Prisons stating that it could adequately handle and treat the defendant's medical conditions. (*Id.*, Ex. A.)

The same day, following the Government's filing of this sentencing submission, the defendant sought another adjournment of sentencing, on the ground that he was in the hospital. (Dkt. 103.)  Specifically, the defendant sought to adjourn sentencing until he was discharged and could attend the proceeding. (*Id.*)

The Court granted the defendant's request, ordering that he was to report on his medical condition every 10 days. (Dkt. Not. 104.)

On October 25, 2019, the defendant provided his first such update. (Dkt. 105.)  In that update, he requested that his sentencing remain adjourned *sine die* until he obtained further information. (*Id.* at 2.)

On October 29, 2019, the Government responded. (Dkt. 106.)  The Government stated, among other things:

> The defendant offers no cogent ground for sentencing to remain unscheduled, notwithstanding that he pleaded guilty nearly six months ago to a serious offense, is out of the hospital, and bears the burden to continue to demonstrate, by clear and convincing evidence, that he is entitled to bail pending sentencing, *see* 18 U.S.C. §§ 3143(a)(2), 3145(c).  To be sure, if the Court sets a sentencing date, a situation may arise that requires a further adjournment (or requires the Court to consider an alternative to in-person sentencing, such as one by videoconference).  But that possibility is not a reason for sentencing to remain unscheduled until such time as the defendant asks for it be scheduled.

(*Id.* at 1.)

Honorable Paul A. Crotty
United States District Judge
March 17, 2020
Page 4

On October 30, 2019, the Court entered an order that the defendant "is hereby to submit for *in camera* review a written report from his doctor by Monday, November 25, 2019, documenting the Defendant's present condition and explaining why the Defendant is medically unable to travel from Pennsylvania to New York for sentencing." (Dkt. 107.) The Court further ordered:  "The report should explain why a further adjournment of the Defendant's sentencing is required or necessary.  Finally, the Defendant is ordered to produce all medical documents in his possession documenting his current medical condition, including his recent fall, his resulting injuries, and the diagnosis of his neurological condition." (*Id.* at 2.)

On November 24, 2019, the Government requested that the Court order that the defendant provide a copy of the report to the Government.  (Dkt. 108.)

The following day, the defendant submitted a letter regarding his medical conditions.  The defendant submitted this letter directly to the Court, with a copy to the Government.  He did not file a copy by ECF or with the Clerk of Court.  Nor did he seek to comply with the district's ECF Privacy Policy (*see* https://nysd.uscourts.gov/sites/default/files/pdf/egovtact042005.pdf) or this Court's individual rules concerning filing material in redacted form or under seal.  The defendant requested in his letter "that the Court continue to adjourn [his] sentencing until he regains his strength and is able to travel to New York and pending the conclusion of additional medical testing." (Def. Nov. 25, 2019 Ltr. at 2.)

On February 24, 2020, the Government filed a letter motion requesting the Court to order the defendant to provide an update, which he had not provided to the Court in nearly three months. (Dkt. 110).

On March 4, 2020, the Court's deputy clerk emailed defense counsel: "The Court would like a response to the government's [2]/24 letter.  Please file a status update on ECF at your earliest convenience.  Thank you."

On March 11, 2020, the defendant submitted a letter, and enclosed excerpts of certain medical records, which were provided to the Government in complete form.  In a cover email, defense counsel stated: "I have not filed it on ECF since it discusses Dr. Olivieri's private health information and attaches medical records."  Again, the defendant did not file a copy of his letter by ECF or with the Clerk of Court, nor did he seek to comply with the district's ECF Privacy Policy or this Court's individual rules concerning filing material in redacted form or under seal. The defendant requested in his letter "that sentencing remain adjourned *sine die*." (Def. Mar. 11, 2020 Ltr. at 1.)

Honorable Paul A. Crotty
United States District Judge
March 17, 2020
Page 5

II.     The Defendant Should File His November 25, 2019 and March 11, 2020 Letters
        Publicly, with Such Redaction as May be Warranted

        A.     Applicable Law

        The Supreme Court has held that "the press and general public have a constitutional right
of access to criminal trials." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982)
(citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)).  The "right of access is
embodied in the First Amendment," and stems in part from the fact that "the criminal trial
historically has been open to the press and general public." *Id.* at 603-04.  The Supreme Court has
further explained the principles underlying the constitutional right of access:

> [T]he right of access to criminal trials plays a particularly significant
> role in the functioning of the judicial process and the government as
> a whole.  Public scrutiny of a criminal trial enhances the quality and
> safeguards the integrity of the factfinding process, with benefits to
> both the defendant and to society as a whole.  Moreover, public
> access to the criminal trial fosters an appearance of fairness, thereby
> heightening public respect for the judicial process.  And in the
> broadest terms, public access to criminal trials permits the public to
> participate in and serve as a check upon the judicial process-an
> essential component in our structure of self-government.

*Id.* at 606.

        Following *Globe Newspaper*, the Supreme Court and the Second Circuit have held that the
First Amendment right of access applies not only to criminal trials themselves, but to other aspects
of criminal proceedings, including preliminary hearings, *see In Press-Enterprise Co. v. Superior
Court of Calif.*, 478 U.S. 1 (1986); pretrial suppression hearings, *see In re Herald Co.*, 734 F.2d
93, 98 (2d Cir. 1984); *voir dire* proceedings, *see ABC, Inc. v. Stewart*, 360 F.3d 90, 105-06 (2d
Cir. 2004); plea hearings, *see United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988); and
sentencing hearings, *see United States v. Alcantara*, 396 F.3d 189, 191-92 (2d Cir. 2005).

        As is relevant here, the Second Circuit also has held that the First Amendment right of
access applies to "written documents submitted in connection with judicial proceedings that
themselves implicate the right of access," *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir.
1987), and to "briefs and memoranda" filed in connection with pre-trial and post-trial motions, *see
United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989).  The public also has a common law right
of access to such documents.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d
Cir. 2006).

        This does not mean, however, that any document filed by a party must be made publicly
available, in whole or in part.  As the Second Circuit has explained, "the mere filing of a paper or
document with the court is insufficient to render that paper a judicial document subject to the right

Honorable Paul A. Crotty
United States District Judge
March 17, 2020
Page 6

of public access." *Lugosch*, 435 F.3d at 119 (internal quotation marks omitted).  The question is not whether a document has been filed, but rather, what is the nature of the document and purpose for which it was filed, specifically, whether it is a "judicial document," that is, one "relevant to the performance of the judicial function and useful in the judicial process."  *Id.* at 126 (internal quotation marks omitted).

Accordingly, a court asked to determine whether a document filed under seal should be unsealed needs to engage in a two-step inquiry.  First, the court must determine whether the document, in whole or in part, is a "judicial document."[1]  If the answer is yes, then the court must either order the document unsealed or make "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing."  *Id.*  If such values are present, a court should consider whether redaction is "a viable remedy," or whether the document presents "an all or nothing matter."  *United* States *v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

The Court's individual rules are in accord.  *See* Individual Practices of Judge Paul A. Crotty, U.S.D.J., Rules 6(F) and 7, *at* https://nysd.uscourts.gov/sites/default/files/practice_documents/PAC%20Crotty%20Individual% 20Practices%20REVISED%201-21-20.pdf.

A.   Discussion

As noted above, the defendant has not even acknowledged, much less sought to comply with, the foregoing case law, this district's ECF Privacy policy, or this Court's individual rules. The sole attempt he has made is his counsel stating, with respect to his March 11, 2020 letter, and without elaboration, "I have not filed it on ECF since it discusses Dr. Olivieri's private health information and attaches medical records."  That general statement is not sufficient.  *See, e.g.*, *United States v. King*, No. 10 Cr. 122 (JGK), 2012 WL 2196674, at *2 (S.D.N.Y. June 15, 2012) (rejecting "'a formulaic recitation'" (quoting *United States v. Strevell*, No. 05 Cr. 477 (GLS), 2009 WL 577910, at *5 (N.D.N.Y. Mar. 4, 2009))).

It is also, in any event, wrong.  The defendant's letters and/or the exhibits thereto discuss in large part the same or substantially similar medical and other conditions that the defendant discussed publicly, and in some detail, in his publicly-filed sentencing submission (*see* Dkt. 101, at 1, 7-10).  The defendant's letters also discuss scheduling and make general assertions about his health, ability to travel, and the timing of sentencing, none of which requires redaction.

---

[1]   Because a judicial document may implicate the common law right of access, but not the First Amendment right of access, and the analysis for whether sealing is warranted in the context of the latter is more stringent, in the appropriate case, a court may need to determine which right of access is at issue.  *See, e.g.*, *United States v. Erie Cty. N.Y.*, 763 F.3d 235, 238-41 (2d Cir. 2014).  This letter assumes that the defendant's letters implicate both rights of access.

Honorable Paul A. Crotty
United States District Judge
March 17, 2020
Page 7

It may well be that the defendant can meet his burden to demonstrate that certain aspects of his letters and the exhibits thereto should be filed in redacted form—indeed, the Government believes that such partial redaction would be appropriate—but he must so demonstrate, and even if he were to do so, that would not warrant wholesale filing under seal of the entirety of his letters and all of the exhibits thereto.

This is particularly true because the defendant has asked that the same medical and other conditions discussed in his letters be "consider[ed]" by this Court "when fashioning a sentence." (Def. Nov. 25, 2019 Ltr. at 2.)  His discussion of those conditions, in the course of seeking to adjourn his sentencing, should accordingly be treated like a sentencing submission—which must be public, absent the defendant demonstrating why portions should be under seal.  *See, e.g.*, *United States v. Johnson*, No. 16 Cr. 457 (NGG), 2018 WL 1611371, at *1 (E.D.N.Y. Apr. 3, 2018) ("Both sentencing memoranda and letters of support from third parties are judicial documents to which a strong presumption of public access attaches." (internal quotation marks omitted; alteration incorporated)); *United States v. Gotti*, No. 17 Cr. 127 (ARR), 2017 WL 4027990, at *1 (E.D.N.Y. Oct. 30, 2017) ("documents submitted to the court for the purposes of sentencing are presumptively public"); *United States v. Dwyer*, No. 15 Cr. 385 (AJN), 2016 WL 2903271, at *1-2 (S.D.N.Y. May 18, 2016) (ordering public filing of sentencing submission and letters in support); *United States v. Huntley*, 943 F. Supp. 2d 383, 384-88 (E.D.N.Y. 2013) (ordering unsealing of sentencing submission); *King*, 2012 WL 2196674, at *2 (ordering public filing of sentencing submission and letters in support); *United States v. Tangorra*, 542 F. Supp. 2d 233, 237 (E.D.N.Y. 2008) (letters submitted "as part of the sentencing process . . . are judicial documents subject to the common law right of access"); *United States v. Sattar*, 471 F. Supp. 2d 380, 390 (S.D.N.Y. 2006) (ordering unsealing of redacted copies of psychiatric report submitted in support of sentencing submission).[2]

III.   The Court Should Set a Sentencing Date On or After April 27, 2020

As the Government stated in its sentencing submission, it recognizes the seriousness of the defendant's medical and other conditions, and it is wholly appropriate for the Court to consider them in determining what sentence to impose.  Indeed, as the Government previously stated, it agrees with the Probation Office that, in light of all of the facts and circumstances of this case, a below-Guidelines sentence would be reasonable.

It may be that, considering the same facts and circumstances, including more recent developments, the Court concludes that a sentence of no incarceration is appropriate.  But there are other options.  The defendant himself previously asked this Court to "impose a combination of

---

[2]   Although public filing, with redaction as necessary, would be required in any event, the Government notes that this case has garnered press interest, including since the defendant pleaded guilty.  *See, e.g.*, Michael Kaplan, *How a beloved HIV doctor became one of New York's top opioid distributors*, N.Y. Post, Aug. 10, 2019, *available at* https://nypost.com/2019/08/10/how-a-beloved-hiv-doctor-became-one-of-new-yorks-top-opioid-distributors/ (last visited Mar. 17, 2020).

Honorable Paul A. Crotty
United States District Judge
March 17, 2020
Page 8

punishments, including home incarceration, detention at a half-way house (when deemed medically fit to do so), and community service."  (Dkt. 101, at 2.)  And even if this Court were preliminarily to find, at this stage, that it is likely that no punishment of any kind of warranted—which would be extraordinary, given both the defendant's conduct and how he undertook the conduct, and would be far below the sentence recommended by the Probation Office—that preliminary finding would not a basis to permit the defendant to avoid being sentenced, which brings finality and results in a judgment of conviction.  *See generally United States v. Pleau*, 680 F.3d 1, 23 (1st Cir. 2012) (en banc) (noting the "strong public interest" in the criminal process not being unnecessarily delayed); *United States v. Gambino*, 59 F.3d 353, 360 (2d Cir. 1995) (recognizing "the aphorism 'justice delayed is justice denied'").

Moreover, punishment is not the only purpose of sentencing.  Sentencing also permits the Court to order financial penalties, including fine and/or forfeiture.  The defendant deposited at least $1,000,000 *in cash* in his bank accounts during the course of his scheme.  (Presentence Investigation Report ("PSR") ¶ 18).  This supplemented his salary of approximately $144,000 a year.  (*See* PSR ¶ 69).

In his written plea agreement, the defendant agreed to forfeit $500,000 as proceeds of his unlawful conduct, and specifically agreed to a written Consent Order of Forfeiture.  (PSR ¶¶ 11(j), 89.)  Yet, as the Government pointed out several months ago (Dkt 106, at 2 n.1), since he pleaded guilty, the defendant's counsel has declined to sign that order, suggesting that this may instead be handled at sentencing—the very proceeding that has repeatedly been adjourned at the defendant's request and that the defendant seeks to remain unscheduled for an indeterminate time.  Proceeding with sentencing would permit the Court to remedy the defendant's declination to do what he previously agreed to do.[3]

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     s/ Daniel C. Richenthal
        Tara M. La Morte
        Daniel C. Richenthal
        Robert B. Sobelman
        Assistant United States Attorneys
        (212) 637-1041/2109/2616

cc:     (by ECF)

        Counsel of Record

---

[3]    Even if the Court declines to schedule sentencing at this time, the Court should order the defendant to explain why his counsel has not signed the Consent Preliminary Order of Forfeiture to which the defendant expressly agreed in writing.