UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA                 :

                                                     :   S2 18 Cr. 316 (PAC)

- against -                              :

                                                     :   **OPINION & ORDER**

JOSEPH OLIVIERI,                         :

       Defendant.                        :
-------------------------------------------------------------------X

        Defendant Joseph Olivieri moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Olivieri has not begun serving his sentence; he is awaiting his surrender date. Olivieri argues that his "serious health conditions, the unprecedented COVID-19 pandemic, and [the Bureau of Prisons' ("BOP")] overwhelmed medical facilities are extraordinary and compelling reasons" "to modify his sentence of imprisonment in the custody of the [BOP] to a term of home confinement of forty months followed by a term of three years' supervised release." Mem. Supp. Mot. Modify Sentence 24–25, ECF No. 148–1 ("C.R. Mot."). The Government argues that (1) Olivieri's motion is premature, because he must begin serving his sentence before moving for compassionate release; (2) COVID-19 does not pose a substantial risk of harm to Olivieri because he has already had and recovered from COVID-19, and is fully vaccinated; and (3) "the relevant sentencing factors in 18 U.S.C. § 3553(a) strongly counsel against a non-custodial sentence." Gov't's Opp'n 1, 11–13, ECF No. 156. For the reasons that follow, Olivieri's motion is denied without prejudice to its renewal should Federal Medical Center ("FMC") Devens fail to meet his health needs.

1

## BACKGROUND

On April 30, 2019, Olivieri pleaded guilty to participating in a conspiracy to unlawfully distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Min. Entry dated Apr. 30, 2019; S2 Superseding Indictment 1–2, ECF No. 41; Judgment 1, ECF No. 126. During the course of the conspiracy, Olivieri's co-defendant, Matthew Brady, recruited "patients" to whom Olivieri (formerly a licensed physician) issued medically unnecessary prescriptions for opioids and steroids. Gov't's Opp'n 2. Brady would then buy the pills from the "patients," resell them "for a substantial profit," and pay Olivieri a cut of the money. *Id.* Olivieri participated in this scheme "from approximately 2013 until April 2018." *Id.*

On May 28, 2020, the Court sentenced Olivieri to forty months' imprisonment, followed by three years' supervised release. Min. Entry dated May 28, 2020; Judgment 2–3. The Court ordered Olivieri to forfeit $500,000 of proceeds he obtained from the conspiracy. Consent Prelim. Order Forfeiture/Money J. 2–3, ECF No. 125. The Court also ordered Olivieri to surrender by March 5, 2021 to begin serving his sentence. Judgment 2. Upon defense counsel's motion and with the Government's consent, the Court extended Olivieri's surrender date to May 5, 2021, as he had not been vaccinated against COVID-19. Mem. Endorsement of First Mot. for Extension of Surrender Date 1, ECF No. 141.

On April 23, 2021, Olivieri filed the instant motion for compassionate release, along with a motion to extend his surrender date (with the Government's consent) by an additional two months. C.R. Mot.; Mem. Endorsement of Second Mot. for Extension of Surrender Date 1, ECF No. 150. The Court extended Olivieri's surrender date to July 12, 2021. Mem. Endorsement of Second Mot. for Extension of Surrender Date 1. On May 12, 2021, the parties jointly moved the Court to hold Olivieri's compassionate release motion in abeyance while Olivieri moved the

2

BOP for release to "home confinement under section 12003(b)(2) of the CARES Act." Mem. Endorsement of Consent Letter Mot. dated May 12, 2021 at 1, ECF No. 152. The Court granted that request and denied a further extension of Olivieri's surrender date, without prejudice. *Id.* at 2.

The BOP denied Olivieri's request for home confinement by letter dated May 24, 2021. Letter 1, ECF No. 153. The Court granted Olivieri's motion to further extend his surrender date to seven days after his compassionate release motion is resolved. Mem. Endorsement of Fourth Mot. for Extension of Surrender Date 1, ECF No. 157.

## **DISCUSSION**

### I.   **Applicable Law**

Unless a statutory exception applies, "[t]he court may not modify a term of imprisonment once it has been imposed." § 3582(c); *Musa v. United States*, 502 F. Supp. 3d 803, 809 (S.D.N.Y. 2020). "Section 3582(c)(1)(A) provides one such exception, often referred to as 'compassionate release.'" *Musa*, 502 F. Supp. 3d at 809 (quoting *United States v. Ogarro*, No. 18-cr-373, 2020 WL 1876300, at *2 (S.D.N.Y. Apr. 14, 2020)). "It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Under § 3582(c)(1)(A), a district court may end a defendant's term of imprisonment and impose a term of supervised release "that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A); *Brooker*, 976 F.3d at 237. The court may also order, as a special condition, that the defendant serve a portion of the supervised release term in home incarceration. *See* § 3582(c)(1)(A); *United States v. Romero*, No. 15 Cr. 445-18, 2021 WL

3

1518622, at *6 (S.D.N.Y. Apr. 16, 2021); *United States v. Brady*, No. S2 18 Cr. 316, 2021 WL 200512, at *3 (S.D.N.Y. Jan. 20, 2021).[1]

A defendant may bring a motion for compassionate release on his own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A); *United States v. Carbonaro*, No. 02 Cr. 743-05, 2021 WL 3188310, at *2 (S.D.N.Y. July 28, 2021). A court may reduce the defendant's term of imprisonment if the defendant establishes that "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i); *see also United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020). The court must also consider "the factors set forth in section 3553(a) to the extent they are applicable," and any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker*, 976 F.3d at 237. Where a defendant brings a compassionate release motion on his own behalf, "[n]either Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id.* The only statutory constraint is that the court shall not consider rehabilitation alone an extraordinary and compelling reason. *Id.* at 237–238 & 238 n.5. "A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would

---

[1] To be clear, the Court is not permitted to release a defendant to home confinement, as that authority is reserved to the BOP under 18 U.S.C. § 3624(c)(2). *United States v. Konny*, 463 F. Supp. 3d 402, 405 (S.D.N.Y. 2020).

4

otherwise be extraordinary and compelling circumstances." *Carbonaro*, 2021 WL 3188310, at *3.

## II. Application

### a. Exhaustion

The parties dispute whether Olivieri's compassionate release motion is properly before the Court. Olivieri argues that he need not be in BOP custody prior to bringing this motion, and that he has exhausted his administrative remedies by requesting compassionate release from the warden of his designated facility, which, at the time, was Federal Correctional Institution ("FCI") Otisville. C.R. Mot. 12–15; C.R. Mot. Ex. C, Letter to Warden Petrucci, ECF No. 148–4. On June 22, 2021, the BOP redesignated Olivieri to FMC Devens. Gov't's Opp'n 1 n.1. The warden of FCI Otisville responded to Olivieri's request by writing that Olivieri "can not be considered for Reduction in Sentence until he is in the custody of Otisville." C.R. Mot. Ex. D, Warden Petrucci's Resp. 1, ECF No. 148–5. The Government argues that "the defendant's motion is legally premature, because the defendant is not in custody." Gov't's Opp'n 6.

District courts within this Circuit are split on this issue. Several have held that compassionate release motions are "premature where the defendant had not begun serving his or her sentence, observing that '[b]y its plain terms, the section applies only to those defendants who have begun serving their term of imprisonment at a BOP facility.'" *United States v. Javed*, No. 16-CR-601, 2021 WL 2181174, at *4 (S.D.N.Y. May 27, 2021) (quoting *United States v. Jordan*, 472 F. Supp. 3d 59, 62–63 (S.D.N.Y. 2020)) (alteration in original); *see also United States v. Konny*, 463 F. Supp. 3d 402, 404 (S.D.N.Y. 2020); *United States v. Spruill*, No. 18-cr-0022-10, 2020 WL 2113621, at *3 (D. Conn. May 4, 2020). Two others have reached the opposite conclusion, but on very different facts than those at issue here. *See United States v.*

5

*Austin*, 468 F. Supp. 3d 641, 643–44 (S.D.N.Y. 2020); *United States v. Thrower*, 495 F. Supp. 3d 132, 138–140 (E.D.N.Y. 2020). In *Austin* and *Thrower*, each "defendant served most of his sentence, was released after the district court vacated the rest of it, and faced reincarceration after that decision was reversed." *Thrower*, 495 F. Supp. 3d at 140. Both courts limited their decisions to "the narrow and exceptional situation" those circumstances presented. *Id.* Here, by contrast, Olivieri has not served any portion of his sentence, and awaits "incarceration after being sentenced in the normal course—a common scenario Congress likely considered." *Id.* at 139; *see also Javed*, 2021 WL 2181174, at *4. Still other courts in this Circuit have assumed *arguendo* that the defendant need not be in custody and denied the motions on the merits. *United States v. Johnson*, No. 16-CR-457-1, 2021 WL 466782, at *3 (E.D.N.Y. Feb. 9, 2021) (denying motion because defendant "may satisfactorily mitigate the increased risk to his health by receiving the [COVID-19] vaccine prior to surrender" and on § 3553(a) grounds); *United States v. Greenfield*, No. 13-CR-00293, 2021 WL 2814693, at *3 (E.D.N.Y. July 6, 2021) (same).

The Court finds that under these circumstances, where Olivieri is awaiting incarceration for the first time, his motion for compassionate release is premature. *See Javed*, 2021 WL 2181174, at *4. *Austin* recognized that the statutory provisions requiring that a defendant first bring his motion to "the warden of [his] facility" and give the BOP 30 days to rule on it "indicate a role for the BOP in evaluating such motions, one which is theoretically undermined by allowing a defendant not in custody to petition for this form of relief." 468 F. Supp. 3d at 643–44 (alteration in original). Olivieri argues that by requesting relief from the warden of FCI Otisville, he complied with § 3582(c)(1)(A)'s requirements. But "as this case and others have demonstrated, [the] BOP is unable to consider the defendant's request until the defendant reports to begin serving [his] sentence." *United States v. Verasawmi*, Crim. No. 17-254, 2021 WL

6

2549303, at *6 (D. N.J. June 22, 2021); *see also Javed*, 2021 WL 2181174, at *4 (noting that BOP's response that it would consider the defendant's compassionate release request once he is in BOP custody "only confirms that in these circumstances, such a request cannot be considered until a defendant is in BOP custody"); Warden Petrucci's Resp. 1 ("This inmate can not be considered for Reduction in Sentence until he is in the custody of Otisville."). The "BOP is still given the first opportunity to decide a compassionate release motion," and for that opportunity to be meaningful, the defendant needs to bring his motion while he is in custody (or at least after having spent some time in custody). *Brooker*, 976 F.3d at 233. It is axiomatic that the BOP will have a difficult time determining whether it is able to meet the defendant's needs before the defendant surrenders and the BOP is able to review how the defendant adjusts to his facility. For this reason, the Court declines to "interpret section 3582(c)(1)(A) in a way that effectively eviscerates BOP's role in the statutory scheme." *Verasawmi*, 2021 WL 2549303, at *6 ("Defendants could simply receive their sentences, request compassionate release from the warden at their designated facilities, wait thirty days for the warden's denial due to his or her inability to review the request, and then file a motion." *Id.*).

Even if Olivieri's motion were not premature, and the Court concluded that he has properly exhausted his administrative remedies, the Court would deny Olivieri's motion on the merits.

### b. Extraordinary & Compelling Reasons

The Court finds that Olivieri has established an extraordinary and compelling reason for a sentence reduction. The Court agrees with the Government that the threat COVID-19 may pose to Olivieri is not an extraordinary and compelling reason, because Olivieri (1) has contracted and recovered from COVID-19; (2) is fully vaccinated against COVID-19; and (3) is designated to

7

FMC Devens, a medical facility that currently has zero positive cases of COVID-19 (and a very high vaccination rate). *See* Gov't's Opp'n 11–13; *United States v. Darling*, No. 10-cr-00640-PAC-2, 2021 WL 2070146, at *3 (S.D.N.Y. May 24, 2021); *United States v. Morel*, No. 10 Cr. 798, 2021 WL 2821107, at *1 (S.D.N.Y. July 7, 2021) ("Because Morel is fully vaccinated and FCI Danbury has zero active cases of COVID-19, the risk that Morel 'will contract COVID-19 and become seriously ill is extremely small.'" (citation omitted)); *United States v. Gaffey*, No. 18 Cr. 693 (RMB), 2021 WL 1530053, at *4, *6 (S.D.N.Y. Apr. 19, 2021); BOP, *Covid-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last visited Aug. 2, 2021).

But COVID-19 risk was only part of the basis for Olivieri's motion; Olivieri also argues that at 74 years old, his 28 medical conditions (including dementia, incontinence, coronary artery disease, asthma, and congestive heart failure), by themselves, constitute extraordinary and compelling reasons for a sentence reduction, because they severely limit his ability to care for himself in prison. C.R. Mot. 3–4. While Olivieri suffered from many of these ailments at the time of his sentencing, and the Court considered them in deciding Olivieri's sentence, Olivieri's health has deteriorated since the Court sentenced him last May. *Id.* at 3–4, 16–18. Since then, Olivieri has been hospitalized and diagnosed with congestive heart failure, pulmonary effusion, and dementia; he frequently falls, and at least two of the falls have been serious enough for him to use Life Alert;[2] and he requires two nurses to visit him twice a week, along with a daily home caretaker. *Id.* at 16–18. Olivieri relies on others to dress and bathe him, and he cannot use the bathroom without their help. *Id.* at 3–4. He "requires the aid of another person every day," and supplements the nurses and health aides with private individuals. C.R. Mot. Ex. E, Decl. of

---

[2] "Life Alert® is a medical alert system specifically designed to protect seniors and all family members in a home health emergency." Life Alert, http://lifealerthelp.com/default (last visited Aug. 3, 2021).

8

Kenneth Hussey ¶¶ 5, 7, ECF No. 148–6. The Government argues only that COVID-19 does not pose a threat to Olivieri sufficient to reach the level of extraordinary and compelling, and does not address whether Olivieri's health conditions themselves are extraordinary and compelling. *See* Gov't's Opp'n 1, 6, 11–13.

"Though the Bureau of Prisons policy statements and application notes are not binding, they can add insight." *United States v. Lewis*, No. 00-cr-1118, 2021 WL 3292180, at *2 (S.D.N.Y. Aug. 2, 2021); *see also Garavito-Garcia v. United States*, — F. Supp. 3d —, No. 21 Cv. 1862, 2021 WL 2525037, at *4 (S.D.N.Y. June 21, 2021). Application Note 1(A)(ii) provides that an extraordinary and compelling reason for a sentence reduction is present where the defendant is:

> suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1 to U.S.S.G. § 1B1.13. The Government concedes that "there is no dispute that the defendant has serious health problems, and that his health has deteriorated since he appeared for sentencing." Gov't's Opp'n 1; *see also id.* at 13; C.R. Mot. Ex. A, Email from Dr. Melissa Bertha, ECF No. 148–2 (discussing how Olivieri's conditions have worsened); Decl. of Kenneth Hussey ¶¶ 11, 15–17, 19–20. Having observed Olivieri at sentencing and reviewed his medical records since, the Court finds that Olivieri's marked deterioration and the accompanying impairment of his ability to care for himself constitutes an extraordinary and compelling reason.

But Olivieri's poor health is "not sufficiently compelling to overcome the § 3553(a) factors." *United States v. Davis*, 14-cr-00296-PAC-1, 2021 WL 1016115, at *3 (S.D.N.Y. Mar. 17, 2021). Olivieri argues that "any time in BOP custody—regardless of the facility—places Dr. Olivieri's life in jeopardy because he would not be able to receive adequate care to monitor and treat his dozens of underlying conditions, nor provide self-care within the prison environment." Reply 9, ECF No. 161; *see also* C.R. Mot. 18–20 (discussing strained resources at BOP facilities in general). This argument is without merit. "FMC Devens is able to treat care needs of male inmates classified as Care Level 4[,] which is the highest classification." *United States v. Cherry*, 18 CR 786-02, 2021 WL 1222121, at *3 (S.D.N.Y. Mar. 31, 2021). "Care Level 4 [inmates] are severely impaired, and may require daily nursing care (for example: those with cancer in active treatment, dialysis, quadriplegia, stroke or head injury patients, [and] major surgical patients . . .)." *Id.* Further, "all specialty areas of medicine are available at FMC Devens and inmates are 'routinely seen at some of the best hospitals in the country, including but not limited to Beth Israel Deaconess Medical Center, Massachusetts General Hospital, and University of Massachusetts Medical Center.'" *Id.* Besides pointing to COVID infections at the beginning of the year (which, as noted above, have since been brought under control) and a staffing shortage in January, 2021, Olivieri has not explained why FMC Devens cannot provide him with the daily care he needs. *See* Reply 8–9; *United States v. Gaffey*, No. 18 Cr. 693, 2021 WL 1530053, at *2, *7–8 (S.D.N.Y. Apr. 19, 2021) (finding that FMC Devens had proven itself well-equipped to care for inmate with chronic kidney disease, a history of bladder cancer, and diabetes, among other conditions, and rejecting argument that "a spike in cases at FMC Devens now raises serious questions about the facility's ability to monitor and care for its most vulnerable inmates" where the facility had only three active cases of COVID-19). Olivieri

10

argues this Court recognized that the BOP is "overwhelmed by COVID-19 and unable to adequately care for those with underlying chronic conditions" when it granted compassionate release to Olivieri's co-defendant, Brady, in part because his diabetes had become unmanaged in prison. C.R. Mot. 19 (citing *Brady*, 2021 WL 200512). But Brady was able to demonstrate concretely that his facility was unable to manage his diabetes because Brady had actually been incarcerated at the facility. Olivieri, by contrast, speculates as to what FMC Devens will or will not be able to do. Olivieri may renew his motion for compassionate release after he surrenders to FMC Devens if he finds that the BOP is truly unable to meet his needs there.

### c. Section 3553(a) Factors

Granting Olivieri a sentence reduction at this time would be inconsistent with several of the § 3553(a) factors. As to the history and characteristics of the defendant, Olivieri reiterates that he (1) "dedicated his life to understanding, treating, and finding a cure for AIDS," (2) had no criminal history prior to this offense, and (3) his offense was a non-violent one, which Olivieri committed "after his health and mental acuity were in steep decline." C.R. Mot. 23 (citing Sent'g Submission, ECF No. 101). But the Court already considered these circumstances at Olivieri's sentencing and determined that a custodial sentence of 40 months was the sentence "sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2). § 3553(a). That 40-month sentence was a substantial break; Olivieri's Sentencing Guidelines range was 87–108 months, and Probation recommended 48 months' imprisonment. Presentence Investigation Report 17, ECF No. 86 ("PSR").[3] Additionally, because Olivieri was

---

[3] "PSRs are not publicly filed. Probation Services prepares PSRs for the Court as an arm of the Court; thus, they are internal court documents that are not subject to a presumption of access under the First Amendment or the common law." *United States v. Lopez*, No. S2 10-cr-798-PAC-1, 2021 WL 2821149, at *1 n.3 (S.D.N.Y. July 7, 2021).

sentenced in May 2020, the Court accounted for the effects of the pandemic at sentencing. *See United States v. Santiago-Almonte*, — F. Supp. 3d —, No. 18-CR-00013, 2021 WL 1742411, at *3 (W.D.N.Y. May 4, 2021).

Olivieri also argues that, given his remorse and failing health, home confinement would provide Olivieri with all the deterrence and punishment necessary. C.R. Mot. 23. The Court rejected this argument at sentencing, too, and determined that a custodial sentence was warranted. The "adequate deterrence to criminal conduct" that § 3553 speaks of is not limited to Olivieri, but also includes general deterrence for other medical professionals who might be tempted to commit similar crimes. § 3553(a)(2)(B); *Gaffey*, 2021 WL 1530053, at *9–10; Gov't's Opp'n 14. Olivieri's offense was very serious. Olivieri abused his position of trust as a licensed physician to make money by prescribing controlled substances to people who did not need them, and his contribution to the opioid epidemic continued for approximately five years. During the course of the conspiracy, Olivieri "was one of the top 15 prescribers of opioids in New York." Gov't's Opp'n 14 (citing PSR ¶ 18). The $500,000 in proceeds that Olivieri agreed to forfeit is further proof of the scale of the conspiracy. The sentence that the Court imposed remains "sufficient, but not greater than necessary" to reflect the seriousness of Olivieri's offense, promote respect for the law, provide just punishment, and afford adequate deterrence. § 3553(a)(2)(A)–(B).

Two other sentencing factors are relevant here. First, Olivieri's designation to FMC Devens honors "the need for the sentence imposed to provide the defendant with needed . . . medical care." § 3553(a)(2)(D); *see Gaffey*, 2021 WL 1530053, at *9. Second, the Court is mindful of "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). The Court sentenced

Brady to 36 months' imprisonment for his participation in the scheme, and while the Court ultimately granted Brady compassionate release, it was not until Brady had served 16 months of that sentence that the Court ordered him released (with a special condition that he spend the first six months of his three-year supervised release term in home incarceration). *Brady*, 2021 WL 200512, at *2–3. Allowing Olivieri to avoid all prison time would create an unwarranted disparity between Olivieri and Brady, especially because Brady was an addict, while Olivieri was a doctor who should have (and did) know better. When Brady moved for compassionate release after he had served only eight months in prison, the Court remarked that "[t]he [First Step Act] does not constitute a get-out-of-jail card" and denied Brady's motion. *United States v. Brady*, S2 18 Cr. 316, 2020 WL 2512100, at *3–5 (S.D.N.Y. May 15, 2020). The First Step Act also is not a "bypass jail altogether" card. *See United States v. Hoskins*, No. 12cr238, 2021 WL 723522, at *2 (D. Conn. Feb. 24, 2021) ("Mr. Hoskins's effort to avoid serving any portion of his sentence of incarceration, particularly considering the severity of his offenses, fails."). It is time for Olivieri to serve his sentence.

## CONCLUSION

For the foregoing reasons, the Court denies Olivieri's motion for compassionate release without prejudice to its renewal should FMC Devens fail to meet his medical needs. Olivieri's request for oral argument on this motion is denied. Olivieri is ordered to surrender within seven days of the filing of this order.

The Clerk of Court is directed to close the motion at ECF number 148.

Dated: New York, New York
August ~~~~, 2021
September 9, 2021

SO ORDERED

/s/ Paul A. Crotty
HONORABLE PAUL A. CROTTY
United States District Judge