UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

UNITED STATES OF AMERICA                    :

                                            :        S2 18 Cr. 316 (PAC)

    - against -                             :

                                            :        **OPINION & ORDER**

JOSEPH OLIVIERI,                            :

              Defendant.                     :

-------------------------------------------------------------------------X

      Defendant Joseph Olivieri moves again for compassionate release pursuant to 18 U.S.C.

§ 3582(c)(1)(A)(i).  Olivieri seeks a sentence reduction and his immediate release from custody.

The Government opposes Olivieri's motion, arguing that Olivieri fails to establish that

extraordinary and compelling reasons outweigh the sentencing factors outlined in 18 U.S.C.

§ 3553(a).  For the reasons stated below, Olivieri's motion is **DENIED** without prejudice to its

renewal should his health further decline.

## BACKGROUND

      The Court presumes familiarity with its previous decision and therefore only briefly

summarizes the facts here.  *See United States v. Olivieri,* S2 18 Cr. 316 (PAC), 2021 WL 4120544

(S.D.N.Y. Sept. 9, 2021).  On April 30, 2019, Olivieri pleaded guilty to participating in a

conspiracy to unlawfully distribute controlled substances in violation of 21 U.S.C. §§ 846 and

841(b)(1)(C).  Min. Entry dated Apr. 30, 2019; (S2) Superseding Indictment 1–2, ECF No. 41;

Judgment 1, ECF No. 126.  Between approximately 2013 and April 2018, Olivieri (formerly a

licensed physician) issued medically unnecessary prescriptions for opioids and steroids to

"patients" referred to him by his co-defendant, Matthew Brady.  *Olivieri,* 2021 WL 4120544, at

*1. Brady would then purchase the pills from these "patients" and resell them "for a substantial profit," paying Olivieri a cut of the proceeds. *Id.*

Nearly a year passed between Olivieri's guilty plea and his sentencing, due significantly to the Court's consideration of Olivieri's serious health issues. The Court granted Olivieri's multiple requests for adjournments, both to give his defense counsel adequate time to review his extensive medical records for his sentencing submission and to allow Olivieri to continue treatment with his physicians. *See, e.g.*, Mem. Endorsement, ECF No. 92 (granting 45-day adjournment); Letter Endorsement, ECF No. 94 (granting five-week adjournment). Then, two days before his October 17, 2019, sentencing, Olivieri requested a third adjournment because he suffered a "serious neurological episode" in early October. Def. Letter Mot., ECF No. 103. The Court adjourned the sentencing and ordered defense counsel to update the Court on Olivieri's condition every 10 days. Mem. Endorsement, ECF No. 104.

For the next six months, Olivieri's sentencing remained adjourned *sine die* while the Court repeatedly conferred with both defense counsel and the Government about Olivieri's physical and mental health. *See* ECF Nos. 107–22. The Court thus was fully aware of and duly considered Olivieri's serious health issues when on May 28, 2020, it sentenced Olivieri to 40 months' imprisonment, followed by three years' supervised release. Min. Entry dated May 28, 2020; Judgment 2–3. To even further accommodate Olivieri's health, the Court set his surrender date for nine months after sentencing in light of the onset of the COVID-19 pandemic. *See* Sent'g Tr. 26:5–27:19.

On April 23, 2021—before surrendering to serve his sentence—Olivieri moved for compassionate release. *See* Def. Mem. Supp. Modify Sentence, ECF No. 148. The Court denied the motion as premature, but concluded that, even if timely, it would be denied on the merits.

*Olivieri*, 2021 WL 4120544, at *3–4. Specifically, while Olivieri's poor health constituted an extraordinary and compelling reason for a sentence reduction, speculation about future inadequate treatment at FMC Devens did not overcome the Section 3553(a) factors. *Id.* at *6. His motion was denied without prejudice to its renewal should FMC Devens fail to meet his medical needs. The Court then denied *even further* requests for surrender date extensions and Olivieri reported to FMC Devens on September 21, 2021. Def. Mem. Supp. Modify Sentence at 7, ECF No. 182 ("C.R. Motion"). He remains at FMC Devens and is currently scheduled to be released from Bureau of Prisons ("BOP") custody on January 26, 2024.

Olivieri now argues for release due to (1) his age and further deteriorating health; (2) the health threats posed by COVID-19; (3) having served almost one half of his 40-month sentence; and (4) a lack of danger to society if he is released to his friends and family at his home in Pennsylvania. *Id.* at 1. The Government opposes the motions, arguing that FMC Devens can meet Olivieri's medical needs; his dementia is not sufficiently severe to justify relief; and that the 3553(a) factors favor continued incarceration.

## DISCUSSION

### I.    Applicable Law

Unless a statutory exception applies, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *Musa v. United States*, 502 F. Supp. 3d 803, 809 (S.D.N.Y. 2020). "Section 3582(c)(1)(A) provides one such exception, often referred to as 'compassionate release.'" *Musa*, 502 F. Supp. 3d at 809. A defendant may bring a motion for compassionate release on his own behalf after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

§ 3582(c)(1)(A).  A defendant must establish that "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i); *see also United States v. Chen*, 22-765, 2023 WL 2229367, at *1 (2d Cir. Feb. 27, 2023).  "With the passage of the First Step Act, district courts have 'broad' discretion in determining what facts constitute 'extraordinary and compelling reasons' justifying release and are not limited to those circumstances specified in the Sentencing Guidelines." *United States v. Castillo*, 03-CR-979 (KMW), 04-CR-408 (KMW), 2023 WL 2262881, at *2 (S.D.N.Y. Feb. 28, 2023) (quoting *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)).

Courts must also consider "the factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).  The only statutory constraint is that courts shall not consider rehabilitation alone an extraordinary and compelling reason. *United States v. Frazier*, No. 17-CR-364-7 (CS), 2023 WL 2139520, at *1 (S.D.N.Y. Feb. 21, 2023) (citing 28 U.S.C.A. § 994(t)).  "A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." *United States v. Carbonaro*, No. 02 Cr. 743-05, 2021 WL 3188310, at *3 (S.D.N.Y. July 28, 2021).

## II.   Application

### a.  Exhaustion

The parties agree that Olivieri has satisfied Section 3582(c)(1)(A)'s exhaustion requirement.  Over thirty days have passed without response since Olivieri requested that the Warden at FMC Devens move for modification of his sentence. *See* C.R. Mot., Ex. F (dated Feb. 8, 2022).  His motion therefore is now properly before the Court.

### b.  Extraordinary & Compelling Reasons

The Court previously found that "at 74 years old, [Olivieri's] 28 medical conditions (including dementia, incontinence, coronary artery disease, asthma, and congestive heart failure),

by themselves, constitute extraordinary and compelling reasons for a sentence reduction, because they severely limit his ability to care for himself in prison." *Olivieri*, at *4–5. This remains true; Olivieri is in poor health and has further deteriorated since his incarceration. On August 26, 2021—approximately two weeks before the Court denied his first motion—Olivieri underwent aortic valve replacement surgery to treat "severe aortic stenosis." C.R. Mot. at 2, Ex. C. Then, in October 2021 while at FMC Devens, he experienced a Mobitz type-2 atrioventricular block which required hospitalization and implantation of a pacemaker. *Id.* at 3, Ex. A. at 19–21. In late April 2022, Olivieri suffered from an "'oozing gastric ulcer with an adherent clot' (a bleeding ulcer)" for which he was awaiting biopsy results when the instant motion was filed.[1] *Id.* at 3–4, Ex. A. at 44. Ultimately, however, Olivieri has not established that FMC Devens is unable to adequately care for his conditions or that his worsening health prevents him from caring for himself. *United States v. Star*, 20-1999(L), 20-2043(Con), 2022 WL 2165895, at *1 (2d Cir. June 16, 2022) ("'A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue,' including where a 'defendant seeks decreased punishment.'") (quoting *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992))).

Olivieri alleges FMC Devens has not provided (1) a 36-session post-surgical cardiac rehabilitation therapy; (2) any care for his dementia; or (3) treatment for gastric pain that culminated in a bleeding ulcer. Def. Reply at 3, ECF No. 191. The Government concedes FMC Devens did not provide Olivieri with his aortic valve post-surgical rehabilitation. Gov't Opp'n at

---

[1] According to a friend, Olivieri also has a "persistent cough" and "large nodes in his chest and near his lungs" and that a "biopsy has not yet been performed due to the invasiveness of the procedure and his age." C.R. Mot. Ex. D., Decl. Kenneth Hussey ¶ 8, ECF No. 182 (dated May 18, 2022). While his friend is a registered nurse, the Court does not interpret his representation based on his "understanding" to be a medical opinion or diagnosis. Further, Olivieri in his motion makes no mention of any pulmonary issues.

2, ECF No. 189. However, the Government asserts, and the Court agrees, that Olivieri has since received adequate cardiac care, evidenced by his prompt hospitalization and pacemaker implementation. Def. Ex. A at 19. According to the cardiac consultation at Nashoba Valley Medical Center, following the procedure Olivieri felt "fine. The pacemaker site look[ed] normal. There [was] no excessive erythema or bleeding. No evidence of infection. No large bruising." *Id.* His records do not indicate that Olivieri has been hospitalized for any other cardiac issues since then or has otherwise been denied cardiac treatments.

The Court also recognizes that, for a time, Olivieri's gastrointestinal conditions were not being properly managed and that he suffered from a "oozing gastric ulcer with an adherent clot" or a "bleeding ulcer." C.R. Mot. at 4, Ex. A. at 44. As of April 2022, however, Olivieri had restarted taking prescription omeprazole and reported "feeling well." Def. Reply Ex. A at 5. It thus appears that his gastrointestinal issues are under control. *See United States v. Mustafa*, 93 Cr. 203 (LGS), 2023 WL 2016581, at *4 (S.D.N.Y. Feb. 15, 2023) (denying compassionate release when defendant's suspended ophthalmological care resumed and was under control); *United States v. Soto*, 13-CR-147 (KMW), 2021 WL 4319421, at *3 (S.D.N.Y. Sept. 23, 2021) (rejecting that benign cysts, although causing a "significant amount of discomfort and anguish" due a delayed period of treatment, warranted compassionate release).

Nor does the record indicate that Olivieri's health prevents him from adequately caring for himself. At least as of September and October 2021, Olivieri was "independent" with regards to nearly all activities of daily living and has a companion in his room and various adaptive equipment to assist with more difficult tasks like dressing and donning/doffing compression stockings. C.R. Mot. Ex. A at 15, 16. Olivieri has the "physical ability to complete all ADLs, including UE

dressing."[2] *Id.* at 15. And while he does have a "senile gait" and other symptoms that place him at a high risk of falling, Def. Reply, Ex. A at 1–2, his medical records do not show that Olivieri has fallen or otherwise injured himself while at FMC Devens.

Despite the adequacy of BOP's medical care, the Court is concerned about Olivieri's current cognitive status. The Court's analysis of Olivieri's dementia is complicated by the lack of current medical records supplied by either party. It is undisputed that Olivieri was diagnosed with some form of dementia as early as November 2019. Def.'s Letter Mot., ECF No. 121. FMC Devens administered two forms of mental status testing upon Olivieri's arrival—the results indicated "possible dementia" and "moderately impaired overall cognitive functioning." C.R. Mot., Ex. A at 1, 16. The Court rejects the Government's representations to the contrary, particularly because BOP records dispute its analysis and because it failed to submit any declarations, medical records, or other form of supporting evidence. *See* Gov't Opp'n at 2–3.

On the other hand, Olivieri does not provide records that show his dementia is now so advanced as to justify release. "[A] court may reduce a sentence for extraordinary and compelling reasons, including where the defendant is suffering from a terminal illness (i.e., a serious advanced illness with an end of life trajectory) . . . such as . . . advanced dementia," *United States v. Coles*, 19 Cr. 789 (PGG), 2023 WL 1865349, at *2 (S.D.N.Y. Feb. 9, 2023) (quoting U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A)(i)) (cleaned up), or when a defendant suffers from "a serious functional or cognitive impairment . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 cmt.

---

[2] "ADL" and "UE" are common occupational therapy abbreviations for activities of daily living and upper extremity, respectively. *See* Pippa Peterson, *Occupation Therapy Acronyms & Abbreviations*, https://www.clinicient.com/guide/occupational-therapy-acronyms/ (last accessed Mar. 2, 2023).

n.1(A)(ii).  To show that his dementia now is advanced/severe, Olivieri submits declarations from

his friend and attorney, who both describe him as increasingly forgetful, frustrated, and irritable.

*See* C.R. Mot., Ex. D, Decl. Kenneth Hussey ¶ 4; Def. Reply at 1–2, Ginsberg Decl. ¶ 3.  The Court

has considered these statements but affords little weight to non-clinical observations diagnosing

Olivieri with severe or advanced dementia.[3]  *See Star*, 2022 WL 2165895, at *1 ("The actual

severity of [the defendant's] medical conditions is unclear because he has provided no medical

records.").

The Court is particularly disinclined because what medical records Olivieri does provide

are outdated and contradictory.  When Olivieri first arrived at FMC Devens in September 2021,

his dementia seemed to be at its worst.  Olivieri had "decreased cognitive skills" and did not know

the "current year, month, or location."  C.R. Mot. Ex. A. at 1.  A patient admission assessment

dated September 28, 2021, described Olivieri as "confused" and not oriented to "place" or "time",

but found he was oriented to "person," "cooperative," "alert," and able to understand and follow

directions and make decisions.  *Id.* at 23–24, 28.

The stress of arriving in a new environment may have temporarily exacerbated Olivieri's

spatial confusion because one month later, he displayed "some cognitive issues" but "appear[ed]

to be functioning well."  *Id.* at 14.  Olivieri scored only two points lower on the same cognitive

test (the St. Louis University Mental Status Exam or "SLUMS") that Olivieri's neuropsychologist

administered in November 2019.  *Compare* Letter Mem., Ex. D, ECF No. 121 (scoring a 19/30 on

SLUMS) *with* C.R. Mot. Ex. A at 39 (scoring a 17/30 on SLUMS, dated October 21, 2021).  That

---

[3] As noted above, although Olivieri's friend is a registered nurse, the Court is not persuaded.
Hussey's declaration does hold itself out to be a medical opinion; is not based on a review of
Olivieri's medical records; and lacks any objective, clinical criteria.  *See* Decl. Kenneth Hussey,
¶¶ 3–4 ("[Olivieri] demonstrates increased forgetfulness, frustration, and irritability.").

Olivieri scored just within the "dementia" range on a test designed for "detecting mild cognitive impairment and dementia" suggests that—at least in October 2021—his dementia was not severe. *Id.* (indicating "dementia" category ranging from 1 to 20, out of 30 total points). Further, Olivieri's treating cardiologist at Nashoba Valley Medical Center noted that Olivieri had a history of "mild dementia." *Id.* at 19. And, by October 2021, Olivieri was oriented to his housing unit, knew where to receive his daily medications, and used a calendar on his wall to keep track of the days, "as previously instructed by OT." *Id.* at 16.

Olivieri's next medical records are from nearly six months later. In March 2022, his doctors described his dementia as "stable" and found he was "functioning well on unit." Def. Reply, Ex. A at 4. Finally, at his April 2022 endoscopy, Olivieri was "competent . . . alert and oriented." C.R. Mot. Ex. A. at 42. Indeed, Olivieri's recent records indicate that he maintains the ability to communicate clearly and coherently with his doctors regarding his medical issues. *See* Def. Reply Ex. A, 3–4; *cf. United States v. Lochmiller*, 473 F. Supp. 3d 1245, 1246–48 (D. Col. 2020) (granting compassionate release when defendant was diagnosed with advanced dementia and was "confused nearly all the time" and "lost much of his ability to communicate"). There are no medical records after April 2022.

On this record, the Court cannot conclude that Olivieri's dementia has so advanced that he is unable to adequately care for himself.[4] The Court is not disregarding Olivieri's concerns, but they must be properly documented to revisit the issue.

---

[4] Olivieri also alleges that FMC Devens has failed to provide him with any treatment for his dementia and suggests there are "several medications and therapies used to alleviate symptoms of dementia." Def. Reply at 2, n.2. This is not accurate; Olivieri was working with staff at FMC Devens to manage some symptoms of his dementia. C.R. Mot. Ex. A, at 16; *see also* Mayo Clinic, *Dementia: Occupational Therapy* (https://www.mayoclinic.org/diseases-conditions/dementia/diagnosis-treatment/drc-20352019) (last accessed Mar. 3, 2022). Further, the

Finally, Olivieri attempts to resuscitate his argument that COVID-19 warrants his release. The Court in its previous denial explicitly rejected that a threat of contracting COVID-19 alone could constitute extraordinary and compelling circumstances. *Olivieri*, at *4. Olivieri is fully vaccinated and, as discussed above, his medical conditions are sufficiently being managed. *United States v. Mustafa*, No. 93 Crim. 203, 2023 WL 2016581, at *4 (S.D.N.Y. Feb. 15, 2023) (noting increasing reluctance of courts to reduce a sentence where defendant's medical conditions are under control, and he is fully vaccinated). Olivieri has now been incarcerated at FMC Devens for nearly a year and a half without contracting COVID-19, let alone suffering from serious side effects. The Court finds, again, that COVID-19 is not currently an extraordinary and compelling reason justifying release.

### c. Section 3553(a) Factors

Most of Olivieri's arguments regarding the balance of the Section 3553(a) factors are reiterations of facts raised both at sentencing and in his initial motion for compassionate release. *See* C.R. Mot. at 14–17. The Court continues to find that Olivieri's 40-month custodial sentence accurately accounts for his history and characteristics; the need for adequate deterrence and a just punishment that promotes respect for the law; and the seriousness of his crimes. *See Olivieri*, 2021 WL 4120544 at * 6. It bears repeating that the 40-month sentence Olivieri received was a substantial variance from the Sentencing Guideline range of 87-108 months, a variance the Court determined was warranted after considering Olivieri's poor physical and mental health. *Olivieri*, 2021 WL 4120544, at *6. Further, his designation to FMC Devens continues to honor "the need for the sentence imposed to provide the defendant with needed . . . medical care." § 3553(a)(2)(D);

---

Court is ill-equipped to determine if Olivieri is eligible to receive such therapies given the conflicting and inadequate medical records.

*see also United States v. Gaffey*, 18 Cr. 693 (RMB), 2021 WL 1530053, at *9 (S.D.N.Y. Apr. 19, 2021).

Even if the Court agreed that Olivieri presents a low risk of recidivism if released, the crimes he committed were and remain extraordinarily serious. *See Castillo*, 2023 WL 2262881 at *3 (concluding seriousness of offense outweighed low risk of recidivism); *see also United States v. Haney*, 454 F. Supp. 3d 316, 323 (S.D.N.Y. 2020) (rejecting that advanced age alone warrants compassionate release). Olivieri did "terrible damage" to the community and was "one of the top 15 prescribers of opioids in New York." Sent'g Tr. 13:22–24, 25:5–6; *Olivieri*, 2021 WL 4120544 at *6. He played a critical role in flooding the streets of New York with hundreds of thousands of pills of controlled substances for illicit use, including highly addictive opioids like oxycodone, oxymorphone, and morphine sulfate. *See* Presentence Investigative Report ("PSR"), ¶¶ 11, 18, ECF No. 86. Despite his obligation as a licensed physician to "do no harm," his actions almost certainly fueled countless addictions, all for the sole purpose of furthering his own pecuniary gain. And while Olivieri agreed to forfeit $500,000, his financial records indicate he may have pocketed nearly double that. *Id.* ¶ 18. The Court imposed a sentence that remains "sufficient, but not greater than necessary" to reflect the factors outlined in Section 3553(a). In short, Olivieri fails to allege any facts that would support reconsideration.

The Court is also mindful of the need to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see also United States v. Seabrook*, 16 Cr. 467 (AKH), 2023 WL 2207585, at *3–4 (S.D.N.Y. Feb. 23, 2023) (granting defendant compassionate release because of unjust disparity between defendant's 58-month sentence and co-conspirator's 13-month sentence). Olivieri's co-defendant Matthew Brady served 16 months of a 36-month sentence before being granted

compassionate release because his unmanaged diabetes posed an acute risk to his health were he to contract COVID-19. *See United States v. Brady*, No. S2 18 CR. 316, 2021 WL 200512, at *1 (S.D.N.Y. Jan. 20, 2021). Brady, however, was incarcerated during the height of the pandemic; the Court specifically extended Olivieri's surrender date multiple times to avoid placing Olivieri in the exactly the situation that warranted Brady's release. *See, e.g.*, Memo Endorsements, ECF No. 141, 152, 169.

Further, while Olivieri and Brady's personal circumstances differ, Olivieri's counsel conceded at sentencing that there are arguments that "Dr. Olivieri's role in the offense was more serious." Sent'g Tr. 15:7–8. And, as the Court previously found, some disparity may be warranted because while "Brady was an addict, Olivieri was a doctor who should have (and did) know better." *Olivieri*, 2021 WL 4120544 at *6. Olivieri may end up serving more time than Brady; but because Olivieri is the more culpable defendant, such an outcome is both expected and warranted.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court denies Olivieri's motion for compassionate release without prejudice to its renewal should Olivieri's mental or physical health further deteriorate such that he can no longer care for himself or should FMC Devens become unable to provide appropriate care. Olivieri's request for oral argument on this motion is denied.

Dated: New York, New York
     March ___6___, 2023

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge